376 F.3d 1030
 Heu Long SIONG; Bao Moua Siong; Enevada Siong; Yang Yi Siong; Cheng Kou Siong; May Siong, Petitioners,
v.
IMMIGRATION AND NATURALIZATION SERVICE, Respondent.
Heu Long Siong; Bao Moua Siong; Enevada Siong; Yang Yi Siong; Cheng Kou Siong; May Siong, Petitioners,
v.
John Ashcroft, Attorney General, Respondent.
 No. 99-71524.
 No. 03-71379.
 United States Court of Appeals, Ninth Circuit.
 Submitted April 10, 2001.
 Submission Vacated April 13, 2001.
 Argued and Submitted March 23, 2004.
 Filed July 23, 2004.
 
 COPYRIGHT MATERIAL OMITTED COPYRIGHT MATERIAL OMITTED Stephen V. Scribner, Santa Rosa, CA, for the petitioners.
 Daniel D. McClain, Office of Immigration Litigation, Civil Division, U.S. Department of Justice, Washington, DC, for respondents.
 On Petitions for Review of Orders of the Board of Immigration Appeals. Agency Nos. Asa-cvg-ung, Ady-qbs-aaq, Avv-exz-vjv, Ayk-xpq-uzv, Adg-vnc-dhz, Auq-uku-dae.
 Before: REINHARDT, TASHIMA, and BERZON, Circuit Judges.
 TASHIMA, Circuit Judge:
 
 
 1
 In No. 03-71379, petitioners Heu Long Siong, his wife, and his four children petition for review of a decision of the Board of Immigration Appeals ("BIA" or "Board"), dismissing their motion to reopen their deportation proceedings. In No. 99-71524, Siong[1] had previously petitioned this court to review the decision of the BIA dismissing as untimely his appeal from the decision of the Immigration Judge ("IJ"). We vacated submission of the prior case and held it in abeyance pending the BIA's consideration of Siong's motion to reopen proceedings. The BIA subsequently denied the motion to reopen, and Siong filed a new petition for review. The cases were consolidated for consideration.[2] We have jurisdiction pursuant to former 8 U.S.C. § 1105a, as amended by § 309(c)(4) of the Illegal Immigration Reform and Immigrant Responsibility Act of 1996. Kalaw v. INS, 133 F.3d 1147, 1150 (9th Cir.1997).
 
 BACKGROUND
 
 2
 Siong and his wife are natives of Laos, of Hmong ethnicity, and citizens of France. Their children are natives and citizens of France, where their family lived for 13 years. During the Vietnam War, Siong was trained by the Central Intelligence Agency ("CIA") to spy on North Vietnamese troops and to search for missing American soldiers. He served the CIA in Laos for 11 years, until the United States withdrew, at which time he and his family went to refugee camps in Thailand. He did not feel safe in Thailand "because of Vietnamese Communists who were sent out to kill pro-American Laotian spies in the camp" and therefore fled with his family to France in 1977.
 
 
 3
 In a hearing before the IJ, Siong testified that he was unable to return to Laos because it was too dangerous. One of Siong's friends, Vue Mai, who also had been a United States collaborator, had returned to Laos and was killed by the communist government.
 
 
 4
 Siong also testified about his inability to return to France. He stated that France was not safe for him because "the communist government of Laos sent people to look for him in France." Several of Siong's acquaintances who, like him, had worked for the CIA and fled to France had been harmed.[3] Furthermore, his wife had received written threats in 1988 and 1989 because her father was a prominent general who fought against the Laotian communist government. Siong reported the threats to the French police but did not bring the written threats to the police station because he believed no one would be able to read Lao. Because of his fear that people were looking for them, Siong and his family were forced to move five times during their 13 years in France.[4] Finally, fearing for his family's safety, Siong sent his wife and children to the United States in December 1990; he followed in February 1991.
 
 
 5
 After coming to the United States on tourist visas, Siong and his family overstayed their visas. In 1993, Siong filed an application for asylum. The former Immigration and Naturalization Service[5] ("INS") denied the application and served Siong and his family with Orders to Show Cause in December 1993.
 
 
 6
 In 1996, Siong filed a new asylum application. On August 10, 1999, the IJ denied that application and ordered Siong and his family deported to France. The IJ concluded that Siong had firmly resettled in France, within the meaning of 8 C.F.R. § 208.15. The IJ acknowledged Siong's testimony regarding discrimination he experienced in France but stated that French authorities were not "deliberately discriminating against people of Laotian heritage."
 
 
 7
 The IJ further concluded that Siong did not have a well-founded fear of future persecution in France for purposes of eligibility for asylum from France. The IJ found that Siong and his wife had testified credibly regarding the written threats they received and the attacks on four of their acquaintances. Nonetheless, the IJ concluded that "there are no objective indications that respondent and his family will be persecuted in France by either the French government or by parties which the French government is either unwilling or unable to control," reasoning that Siong should raise the issue of political violence against Hmong refugees with French authorities.
 
 
 8
 Finally, the IJ addressed problems Siong experienced during the hearings with the four different interpreters, who "were unable to interpret precisely certain expressions" used by Siong to describe "Vietnamese Communists and Laotian Communist assassins." The IJ had submitted the tapes to the Language Services Unit of the Department of Justice, which concluded that the interpretation was competent. The IJ thus found that the interpretation was adequate. The IJ accordingly denied Siong's asylum request and ordered the Siongs deported to France. The IJ did not address the issue of withholding of deportation.[6]
 
 
 9
 The notice of appeal to the BIA was due on September 9, 1999. Siong's former counsel, Rhoda Wilkinson Domingo, did not file the notice of appeal until September 13, 1999. On November 5, 1999, the BIA dismissed the appeal as untimely.
 
 
 10
 On February 2, 2000, Siong filed a motion to reopen with the BIA, alleging that the notice of appeal was untimely because of the ineffective assistance of his former counsel. In September 2000, Siong filed "Supplemental Evidence in Support of Pending Motion to Reopen," submitting with it a notice from the National Visa Center referring to their preference category as "F4." According to Siong's new counsel, Stephen Scribner, this notice established that the Siongs were "beneficiaries of an approved visa petition and, more importantly, that immigrant visas are currently available to each of them." Scribner argued that the Siongs'"eligibility for a new form of relief from deportation will provide an alternative ground for reopening this case."
 
 
 11
 In November 2000, Siong filed "Additional Evidence of Eligibility for New Relief," stating that and the attached Visa Bulletin issued by the State Department confirmed that visas were available to the Siongs. The Siongs were apparently in the Family-Sponsored Preferences Fourth category, which is for brothers and sisters of adult citizens, based on the citizenship of Mrs. Siong's sister.
 
 
 12
 The BIA denied the motion to reopen. First, the Board stated that the motion was more properly characterized as a motion to reconsider and thus was untimely.[7] Even if the motion were a timely-filed motion to reopen, the Board reasoned that it would be denied because Siong did not show prejudice resulting from Attorney Domingo's failure to file a timely appeal. The Board appeared to agree with the IJ's findings that Siong was firmly resettled in France and that he would not face persecution or torture if returned to France. Finally, the Board concluded that Siong failed to show that he was prejudiced by the "allegedly incompetent interpretation." Siong filed a timely petition for review.
 
 STANDARD OF REVIEW
 
 13
 The BIA's denial of a motion to reopen is reviewed for an abuse of discretion. Ordonez v. INS, 345 F.3d 777, 782 (9th Cir.2003). "Where, as here, the BIA adopts the IJ's decision while adding its own reasons, we review both decisions." Kataria v. INS, 232 F.3d 1107, 1112 (9th Cir.2000). The Board's factual determinations are reviewed for substantial evidence and must be upheld unless the evidence compels a contrary conclusion. Andriasian v. INS, 180 F.3d 1033, 1040 (9th Cir.1999).
 
 DISCUSSION[8]
 I. Motion to Reopen or Motion to Reconsider
 
 14
 Siong argues that the BIA incorrectly characterized his motion to reopen as a motion to reconsider. "Where the facts surrounding allegedly ineffective representation by counsel were unavailable to the petitioner at an earlier stage of the administrative process, motions before the BIA based on claims of ineffective assistance of counsel are properly deemed motions to reopen." Iturribarria v. INS, 321 F.3d 889, 891 (9th Cir.2003). The facts regarding Attorney Domingo's failure to file the notice of appeal obviously were not available to Siong at the time of the initial appeal that was dismissed as untimely. The BIA thus "abused its discretion when it misapplied its regulations to classify [Siong's] motion as a motion to reconsider." Id. at 897; see also Singh v. Ashcroft, 367 F.3d 1182, 1185 (9th Cir.2004) (relying on Iturribarria to hold that the BIA "erred as a matter of law when it recharacterized Singh's motion to reopen as a motion for reconsideration").
 
 
 15
 Although the BIA erred in concluding that the motion was an untimely motion to reconsider, the Board went on to state that, even if the motion were a timely-filed motion to reopen, it would be denied. The BIA did not simply dismiss Siong's motion as untimely but addressed the merits of the motion to reopen. That error therefore did not prejudice Siong.
 
 II. Ineffective Assistance Claim
 A. Procedural Requirements
 
 16
 Siong correctly contends that he has complied with the procedural requirements for an ineffective assistance of counsel claim established in Matter of Lozada, 19 I. & N. Dec. 637 (BIA 1988). A petitioner alleging ineffective assistance of counsel must ordinarily comply with three procedural requirements "`(1) provide an affidavit describing in detail the agreement with counsel; (2) inform counsel of the allegations and afford counsel an opportunity to respond; and (3) report whether a complaint of ethical or legal violations has been filed, and if not, why.'" Rojas-Garcia v. Ashcroft, 339 F.3d 814, 824 (9th Cir.2003) (quoting Melkonian v. Ashcroft, 320 F.3d 1061, 1071-72 (9th Cir.2003)); see also Rodriguez-Lariz v. INS, 282 F.3d 1218, 1227 (9th Cir.2002) (Lozada "factors are not rigidly applied, especially when the record shows a clear and obvious case of ineffective assistance").
 
 
 17
 Siong submitted with his motion to reopen (1) his own declaration describing his agreement with Attorney Domingo; (2) a declaration from Domingo acknowledging her fault in filing the untimely appeal; (3) the letter advising Domingo of the complaint against her being reported to the state bar; and (4) the letter to the state bar. He fully complied with the procedural requirements of Lozada. Failing to file a timely notice of appeal is obvious ineffective assistance of counsel, as the Board at least implicitly recognized. The Board, however, found that Siong failed to establish the requisite prejudice resulting from Attorney Domingo's actions. See Singh, 367 F.3d at 1186 (stating that "to succeed on a claim of ineffective assistance of counsel, an alien must show both error and prejudice").
 
 B. Prejudice
 
 18
 Ineffective assistance of counsel in a deportation proceeding violates due process if the proceeding "`was so fundamentally unfair that the alien was prevented from reasonably presenting his case.'" Munoz v. Ashcroft, 339 F.3d 950, 955 (9th Cir.2003) (quoting Ortiz v. INS, 179 F.3d 1148, 1153 (9th Cir.1999)). "The petitioner must show prejudice from counsel's alleged deficient performance. Prejudice results when `the performance of counsel was so inadequate that it may have affected the outcome of the proceedings.'" Id. (quoting Ortiz, 179 F.3d at 1153).
 
 
 19
 "Prejudice is ordinarily presumed in immigration proceedings when counsel's error `deprives the alien of the appellate proceeding entirely.'" Rojas-Garcia, 339 F.3d at 826 (quoting Dearinger ex rel. Volkova v. Reno, 232 F.3d 1042, 1045 (9th Cir.2000)). The presumption may be rebutted; however, it is not rebutted if the alien is able to show "`plausible grounds for relief.'" Dearinger, 232 F.3d at 1046 (quoting United States v. Jimenez-Marmolejo, 104 F.3d 1083, 1086 (9th Cir.1996)). Thus, in Dearinger, we held that the petitioner had shown prejudice because her counsel's error resulted in this court's dismissal of her petition for review as untimely and she had demonstrated plausible grounds for relief. Id.
 
 
 20
 Similarly, in Singh, we presumed prejudice because counsel's failure to file a brief with the BIA resulted in the BIA's summary dismissal of his appeal. Singh, 367 F.3d at 1189. We further held that the petitioner had "presented a claim that could plausibly succeed on the merits" and that the presumption of prejudice accordingly had not been rebutted. Id. at 1190. Singh thus held that the BIA abused its discretion in denying the motion to reopen. Id.; cf. Rojas-Garcia, 339 F.3d at 826-28 (holding that the petitioner was not prejudiced by his counsel's failure to file a brief with the BIA because there were no plausible grounds for relief at the time of his appeal to the BIA).
 
 
 21
 The situation in the instant case is somewhat different from those presented in Singh and Rojas-Garcia, where the BIA summarily dismissed the appeals for failure to file a brief, or Dearinger, where this court dismissed the petition for review for untimeliness. Here, by contrast, after the BIA dismissed Siong's appeal from the IJ's decision as untimely, Siong filed a motion to reopen with the BIA. In its denial of the motion to reopen, the BIA appeared to agree with the IJ's finding that Siong firmly resettled in France. It further stated that there was "nothing to suggest" that Siong would be persecuted or face torture if returned to France. The INS thus contended at oral argument that the BIA addressed Siong's claims on the merits. Consequently, the INS argues, Siong was not prejudiced by Attorney Domingo's failure timely to appeal the IJ's decision because he was not "deprive[d] ... of the appellate proceeding entirely." Dearinger, 232 F.3d at 1045. We reject this argument.
 
 
 22
 In a direct appeal of an IJ's decision, the BIA reviews the IJ's findings of fact for clear error and "questions of law, discretion, and judgment and all other issues" de novo. 8 C.F.R. § 1003.1(d)(3). By contrast, the decision to grant or deny a motion to reopen is "within the discretion of the Board."[9] 8 C.F.R. § 1003.2(a); see also INS v. Doherty, 502 U.S. 314, 323, 112 S.Ct. 719, 116 L.Ed.2d 823 (1992) (stating that "[t]he granting of a motion to reopen is ... discretionary"); Cano-Merida v. INS, 311 F.3d 960, 965 (9th Cir.2002) (stating that "`[t]he BIA has considerable discretion concerning motions to reopen'") (quoting Lainez-Ortiz v. INS, 96 F.3d 393, 395 (9th Cir.1996)). Because the BIA was considering only the denial of a motion to reopen, Siong did not receive the in-depth review of the IJ's factual conclusion that he would be entitled to receive on direct appeal. Furthermore, the Board's discussion of the merits of Siong's claim was only in the context of determining whether he had shown the prejudice required to establish an ineffective assistance claim. Finally, because Siong's initial appeal to the BIA was dismissed as untimely, no transcript of the proceedings before the IJ was prepared. The Board therefore did not have a transcript before it — an obvious impediment to review.
 
 
 23
 We therefore presume that Siong was prejudiced by his former counsel's failure to file a timely notice of appeal. The next question is whether Siong has demonstrated plausible grounds for relief. We conclude that he has. Siong need only show that "`the BIA could plausibly have determined that he was [eligible for relief] based on the record before it.'" Singh, 367 F.3d at 1189 (quoting Rojas-Garcia, 339 F.3d at 827) (alteration in original).
 
 
 24
 There are several plausible grounds for relief. First, Siong may be eligible for asylum from France because of a well-founded fear of future persecution should he return there. Second, Siong challenges the IJ's conclusion that he firmly resettled in France, barring a finding of eligibility for asylum from Laos.[10] Third, although a finding of firm resettlement precludes asylum, it is not a bar to withholding of deportation. Thus, even if the IJ correctly found that Siong was firmly resettled in France, barring his asylum claim, the IJ should have considered whether Siong was eligible for withholding of deportation. Finally, Siong has alleged translation errors that may establish a plausible ground for relief.
 
 1. Asylum from France
 
 25
 Keeping in mind that Siong need only establish plausible grounds for relief, we review the requirements for asylum. An alien may establish eligibility for asylum based on "a well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion." 8 U.S.C. § 1101(a)(42)(A). To establish a well-founded fear of future persecution, the applicant must satisfy both a subjective and an objective component. Melkonian, 320 F.3d at 1064-65. The subjective test is satisfied by credible testimony that the applicant genuinely fears persecution on a statutorily-protected ground by the relevant government or by forces the government is unable or unwilling to control. Id. at 1065. "The objective component is satisfied where credible, direct, and specific evidence in the record supports a reasonable fear of persecution." Id.
 
 
 26
 The IJ found that Siong and his wife testified credibly about their fear of persecution based on the written threats they received and the attacks on four of their friends in France. There is no dispute that the threats and attacks Siong fears are based on his activity fighting the Laotian communists. Nonetheless, the IJ concluded that "there are no objective indications that respondent and his family will be persecuted in France by either the French government or by parties which the French government is either unwilling or unable to control." We have held that "affirmative state action is not necessary to establish a well-founded fear of persecution if the government `is unwilling or unable to control those elements of its society responsible for targeting' a particular class of individuals." Avetova-Elisseva v. INS, 213 F.3d 1192, 1196 (9th Cir.2000) (quoting Mgoian v. INS, 184 F.3d 1029, 1036 (9th Cir.1999)). Furthermore, "we have consistently held that death threats alone can constitute persecution." Navas v. INS, 217 F.3d 646, 658 (9th Cir.2000). The Siongs' credible testimony about the death threats and the attacks in France on four friends of Siong who, like him, served the CIA in Laos, therefore establishes plausible grounds for relief. See Lim v. INS, 224 F.3d 929, 934 (9th Cir.2000) ("To effect a well-founded fear, a threat need not be statistically more than fifty-percent likely; the Supreme Court has suggested that even a one-tenth possibility of persecution might effect a well-founded fear.").
 
 
 27
 The IJ further stated that Siong had presented "almost no documentation concerning targeting of Hmong French citizens by Laotian government agents" in France. The IJ did, however, acknowledge that Siong had submitted a letter written by the Executive Director of Hmong International Human Rights Watch, which asserts that the organization has "lots of evidence that the Laotian communist government ... is conducting political violence against Hmong refugees living in France." The letter explains that the Laotian government is seeking out and killing Hmong refugees in France who, like Siong, worked for the CIA and implies that Siong is in particular danger because of his father-in-law's continued resistance to the Laotian government.
 
 
 28
 We have held that where the IJ "offers no legitimate reason to question the applicant's credibility, we must reverse a finding that the applicant failed to meet his burden of proof because he did not provide corroborating evidence." Salaam v. INS, 229 F.3d 1234, 1239 (9th Cir.2000). Because the IJ found Siong credible, the IJ erred in relying on the alleged lack of corroborating evidence to support Siong's asylum claim. Moreover, the letter cited by the IJ constitutes "credible, direct, and specific evidence" of Siong's fear of persecution, further supporting the conclusion that Siong has established plausible grounds for relief based on his asylum claim. Melkonian, 320 F.3d at 1065.
 
 2. Firm Resettlement
 
 29
 "An alien is considered to be firmly resettled if, prior to arrival in the United States, he or she entered into another country with, or while in that country received, an offer of permanent resident status, citizenship, or some other type of permanent resettlement...." 8 C.F.R. § 208.15. A presumption of resettlement arises because Siong now is a French citizen. A finding of firm resettlement in France would bar Siong from eligibility for asylum from Laos. See 8 C.F.R. § 208.13(c)(2)(i)(B) (mandating denial of asylum if an applicant who filed is or her application before April 1, 1997 "[h]as been firmly resettled within the meaning of § 208.15"). However, an alien may rebut a finding of firm resettlement in a third country by establishing that "the conditions of his or her residence in that country were ... substantially and consciously restricted by the authority of the country of refuge." 8 C.F.R. § 208.15(b).[11] Factors to be considered in making this determination are:
 
 
 30
 the conditions under which other residents of the country live; the type of housing, whether permanent or temporary, made available to the refugee; the types and extent of employment available to the refugee; and the extent to which the refugee received permission to hold property and to enjoy other rights and privileges, such as travel documentation that includes a right of entry or reentry, education, public relief, or naturalization, ordinarily available to others resident in the country.
 
 
 31
 
 Id.
 
 
 
 32
 Because Siong's alleged potential persecutors are not French authorities, it is not clear that his residence in France was "substantially and consciously restricted by the authority of the country of refuge." Id. Nonetheless, Siong has presented credible evidence that he may be subject to persecution in France, and we have stated that "firmly resettled aliens are by definition no longer subject to persecution." Yang v. INS, 79 F.3d 932, 939 (9th Cir.1996).
 
 
 33
 We have already concluded that Siong has presented a plausible claim for asylum from France based on a well-founded fear of future persecution in France. "The regulatory definition of firm resettlement captures the oft-repeated understanding that asylum is not granted to aliens who have found a haven from persecution...." Ali v. Reno, 237 F.3d 591, 595 (6th Cir.2001). Because of the evidence that Siong may not have "found a haven from persecution" in France, id., Siong also has established at least a plausible claim that he is not firmly resettled in France.
 
 3. Withholding of Deportation
 
 34
 Siong contends that the IJ erred by failing to consider his claim for withholding of deportation. The BIA found that Siong failed to show prejudice from the IJ's failure to address Siong's withholding claim. Firm resettlement, however, which was the basis for the IJ's rejection of Siong's asylum claim, is not a bar to withholding. Compare 8 C.F.R. § 208.13(c)(2)(i)(B) (stating that asylum shall be denied to an alien who has been firmly resettled) with 8 C.F.R. § 208.16 (discussing eligibility for withholding). Unlike asylum, withholding of deportation is not discretionary. Former 8 U.S.C. § 1253(h)(1) provided that "[t]he Attorney General shall not deport or return any alien (other than an alien described in section 241(a)(4)(D)) to a country if the Attorney General determines that such alien's life or freedom would be threatened in such country on account of race, religion, nationality, membership in a particular social group, or political opinion." Thus, even if Siong is not eligible for asylum from Laos, because he firmly resettled in France, firm resettlement is not a bar to withholding of deportation.
 
 
 35
 The analysis of this issue is confused because both the Board and the IJ seemed to conflate the issues of asylum from Laos and asylum from France. First, neither the IJ nor the BIA addressed the issue of asylum from Laos, apparently assuming that Siong was eligible for asylum from Laos but finding that he was barred from asylum from Laos based on a finding of firm resettlement in France. Both also concluded that Siong had not established eligibility for asylum from France. Siong, however, cannot be barred from withholding of deportation to France based on a finding of firm resettlement in France.
 
 
 36
 The question, therefore, is whether Siong is entitled to withholding of deportation to France. The IJ did not address the issue. The BIA's conclusion that the IJ's failure to address the withholding claim did not prejudice Siong was based on its reasoning that "[t]here is nothing to suggest that" Siong would be persecuted if returned to France. This summary conclusion, made without the benefit of a transcript, is contradicted by the evidence cited above in the discussion regarding whether Siong has established plausible grounds for relief on his asylum claim. The IJ's failure to address Siong's withholding claim and Siong's lack of opportunity to receive direct review of the IJ's decision establish plausible grounds for relief based on Siong's withholding claim.
 
 4. Translation
 
 37
 "Due process requires that an applicant be given competent translation services." He v. Ashcroft, 328 F.3d 593, 598 (9th Cir.2003). In order to make out a due process violation as a result of an incompetent translation, Siong "must demonstrate that a better translation likely would have made a difference in the outcome." Gutierrez-Chavez v. INS, 298 F.3d 824, 830 (9th Cir.2002), amended by 337 F.3d 1023 (9th Cir.2003). "In evaluating incompetent translation claims, we have identified three types of evidence which tend to prove that a translation was incompetent." Perez-Lastor v. INS, 208 F.3d 773, 778 (9th Cir.2000). These are: direct evidence of incorrectly translated words, unresponsive answers by the witness, and the witness' expression of difficulty understanding what is said to him. Id.
 
 
 38
 The BIA concluded that Siong failed to show that he was prejudiced by the translation, even if it was incompetent. As noted above, however, the Board did not have a transcript of the proceedings before it when it denied the motion to reopen. "It is extremely difficult to pinpoint direct evidence of translation errors without a bilingual transcript of the hearing." Id.
 
 
 39
 In his motion to reopen, Siong argued that the transcript would reveal that many of the responses were unresponsive and unrelated to the questions. Because "unresponsive answers by the witness provide circumstantial evidence of translation problems," id., Siong has established at least plausible grounds for relief based on the allegedly faulty translation.
 
 III. Submission of Supplemental Evidence
 
 40
 Finally, in November 2000, Siong submitted a document entitled "Additional Evidence of Eligibility for New Relief" to the Board. The document asserted that the Siongs had qualified for adjustment of status and that "visas are now available" to them. The Board characterized the document as a new motion to reopen because it sought "different relief than sought in their motion concerning the late-filed appeal," and rejected it as time-barred.
 
 
 41
 Because we grant Siong's petition for review on other grounds, we need not decide whether the BIA abused its discretion in characterizing this document as a motion to reopen and in rejecting it as untimely. We assume that Siong will have the opportunity to present this new evidence to the Board in the reopened proceedings.
 
 CONCLUSION
 
 42
 Siong has established plausible grounds for relief and, accordingly, has demonstrated prejudice from his former counsel's failure to file a timely notice of appeal. The BIA therefore abused its discretion in denying Siong's motion to reopen.
 
 
 43
 Even though the BIA appeared to address the merits of Siong's appeal when it denied his motion to reopen, the standard of review it applied was different from and less stringent than that which it would apply on direct appeal. Moreover, because we are reviewing only the denial of Siong's motion to reopen, we cannot review the merits of Siong's claim. On this appeal, we have considered only whether Siong established plausible grounds for relief for purposes of establishing prejudice from his former counsel's error. Siong will not have the opportunity to petition this court for review of the merits of his claim until the Board addresses the merits of Siong's appeal. We therefore grant the petition for review in No. 03-71379 and remand to the BIA with directions to grant the motion to reopen.
 
 
 44
 In No. 99-71524, the petition for review is DISMISSED.
 
 
 45
 In No. 03-71379, the petition for review is GRANTED and the matter REMANDED to the Board for further proceedings.
 
 
 
 Notes:
 
 
 [1]
 The claims of Siong's wife and children are derivative of his claimSee 8 U.S.C. § 1158(b)(3). For simplicity's sake, we will refer to Mr. Siong's claim.
 
 
 [2]
 Siong's counsel agreed at oral argument that Siong's first petition, No. 99-71524, has been rendered moot by the subsequent proceedings before the BIA. We therefore discuss only the BIA's decision denying the motion to reopen
 
 
 [3]
 Laotian agents went to the home of one friend, Lia Moi, in 1987 to assassinate him. In 1988, a second friend, Moulea, was injured by a car bomb, and, in 1989, Yang Va was killed. In 1997, another friend, Lee Touyia, who had worked for the CIA in Laos and resettled in France, was killed
 
 
 [4]
 Siong also testified that he was unable to find work in France because of prejudice against Asians. He and his wife became French citizens in an attempt to improve his chances of getting work, but he was still unable to do so
 
 
 [5]
 The INS has been abolished and its functions transferred to the Department of Homeland SecuritySee Homeland Security Act of 2002, Pub.L. No. 107-296, 116 Stat. 2135 (2002), 6 U.S.C. §§ 101-557.
 
 
 [6]
 At the time of Siong's application, what is now withholding of removal was known as withholding of deportation, formerly found at 8 U.S.C. § 1253(h). The provision regarding withholding of removal is now found at 8 U.S.C. § 1231(b)(3)
 
 
 [7]
 A motion to reconsider must be filed "within 30 days after the mailing of the Board decision." 8 C.F.R. § 1003.2(b)(2). By contrast, a motion to reopen must be filed within 90 days after the final decision. 8 C.F.R. § 1003.2(c)(2). If characterized as a motion to reopen, Siong's motion was timely
 
 
 [8]
 We reject the government's argument that Siong has waived the arguments he raises in his petition for review for failure to exhaust his administrative remedies. Siong raised below all the issues that he now raises
 
 
 [9]
 That discretion, however, is not boundless, as our review of the Board's adjudication of motions to reopen examines "whether the BIA acted arbitrarily, irrationally or contrary to law."Medina-Morales v. Ashcroft, 371 F.3d 520, 529 (9th Cir.2004).
 
 
 [10]
 Although Siong's original application for asylum focused on his need for asylum from Laos, the government conceded at oral argument that Siong raised below the issue of asylum from France and that both the IJ and the BIA addressed the issue. We therefore consider both firm resettlement in France and asylum from France
 
 
 [11]
 The other exception to firm resettlement is if the alien establishes that "entry into that country was a necessary consequence of his or her flight from persecution, that he or she remained in that country only as long as was necessary to arrange onward travel, and that he or she did not establish significant ties in that country." 8 C.F.R. § 208.15(a). Siong does not argue that this exception applies