NOT FOR PUBLICATION

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

| | |
|---|---|
| JESUSA ELIZABETH TOMAS-MATEO, | No. 07-74073 |
| Petitioner, | Agency No. A098-175-283 |
| v. | |
| ERIC H. HOLDER, Jr., Attorney General, | MEMORANDUM[*] |
| Respondent. | |

On Petition for Review of an Order of the
Board of Immigration Appeals

Argued and Submitted March 16, 2011
San Francisco, California

Before: PAEZ, BERZON, and BEA, Circuit Judges.

Jesusa Tomas-Mateo ("Tomas-Mateo"), a native and citizen of Guatemala,

petitions for review of the Board of Immigration Appeals' ("BIA") order

dismissing her appeal from an immigration judge's ("IJ") decision denying her

application withholding of removal and protection under the Convention Against

Torture ("CAT"). We have jurisdiction under 8 U.S.C. § 1252. We review de

---

[*]    This disposition is not appropriate for publication and is not precedent
except as provided by 9th Cir. R. 36-3.

novo the BIA's determination of purely legal issues, *Shrestha v. Holder*, 590 F.3d 1034, 1048 (9th Cir. 2010), and we review for substantial evidence the BIA's denial of asylum, withholding of removal, and CAT relief. *Ahmed v. Keisler*, 504 F.3d 1183, 1191 (9th Cir. 2007). We grant in part and deny in part the petition for review, and we remand.

Before the IJ and the BIA, Tomas-Mateo raised two grounds in support of her claim for withholding of removal under 8 U.S.C. § 241(b)(3)(B). First, Tomas-Mateo asserted that gang members attacked her and her family on account of their membership in the Konjubal tribe. Second, Tomas-Mateo argued that she suffered persecution when the local police refused to protect her from gang attacks because she was a member of the Konjubal tribe. In her brief to this court, Tomas-Mateo abandoned the first ground but not the second. We therefore do not address the first ground.

As to the second ground, Tomas-Mateo argues that, although she raised the argument in her brief to the BIA, the BIA failed to address it[1]. We agree, and as

---

[1] In her brief to the BIA, Tomas-Mateo argued that "[r]espondent's fear was based upon persecution of members of the Konjubal tribe who were not protected by law enforcement authorities." This statement was sufficient to exhaust the issue before the BIA. Whether Tomas-Mateo presented a legally cognizable claim, and if so, whether she presented sufficient evidence to support her claim are issues the BIA should resolve in the first instance.

we said in *Sagaydak v. Gonzales*, the BIA is "not free to ignore arguments raised by a petitioner." 405 F.3d 1035, 1040 (9th Cir. 2005). Accordingly, remand is appropriate for the BIA to consider this issue in the first instance. *See INS v. Ventura*, 537 U.S. 12, 16-18 (2002) (per curiam) (holding that where issues were not considered by the BIA, remand is appropriate).

Finally, Tomas-Mateo contends that the BIA failed to address her CAT claim. We conclude, however, that Tomas-Mateo failed to properly exhaust her CAT claim because in her brief to the BIA she failed to mention the CAT claim in any way. Moreover, as we read Tomas-Mateo's reference to 8 C.F.R. § 1208.16 in her brief to the BIA, it was cited in support of her claim for withholding of removal, and not CAT relief. Even assuming that Tomas-Mateo's CAT claim was properly exhausted, the record evidence fails to satisfy the standard for CAT protection because there is no evidence that she would more likely than not be tortured if returned to Guatemala.

PETITION FOR REVIEW DENIED in part; GRANTED in part; REMANDED.

Each party shall bear its own costs on appeal.

Tomas-Mateo v. Holder, No. 07-74073

BEA, Circuit Judge, concurring in part and dissenting in part:

I respectfully dissent from the majority's remand to the BIA.[1]  Contrary to the majority's assertions, Tomas-Mateo never raised a claim to the BIA that "the local police refused to protect her from gang attacks because she was a member of the Konjubal tribe."  Maj. Op. at 2.  Moreover, even if Tomas-Mateo had raised such a claim, there is absolutely no record evidence that Guatemalan police failed to protect her due to her tribal membership.  Finally, assuming one *could* find in the emanations from the penumbras of Tomas-Mateo's brief to the BIA a claim that Guatemalan police refused to protect her on account of her tribal membership, the BIA properly rejected such an assertion with at least as much clarity as Tomas-Mateo raised it.  Remanding this case is a waste of time and judicial resources.  I would deny the petition in full.

Throughout her immigration proceeding, Tomas-Mateo has contended that she is entitled to mandatory withholding of removal because she was persecuted by criminal gangs on account of her membership in the minority Konjubal Indian

---

[1]  I concur in the majority's denial of Tomas-Mateo's CAT claims.

1

tribe.[2] Tomas-Mateo testified that she had left Guatemala because her sister was raped by gang members in 2003. In addition, Tomas-Mateo testified that when she was 14 or 15 years old—ten or eleven years before she left Guatemala—gang members tried to rape her while she was walking through a park with her girlfriends. The girls fled and were able to escape before being raped, and Tomas-Mateo testified that she was not subjected to further attacks after the attempted rape.

Tomas-Mateo never established that the gangs targeted her due to her membership in the Konjubal tribe. Tomas-Mateo submitted *no* evidence that criminal gangs in Guatemala singled out members of the Konjubal, nor did she testify that she or her sister had been singled out on account of her tribal membership. When asked by the IJ if the attacks were motivated by the assailant's sexual desire, Tomas-Mateo responded that the gang was comprised of "bad people who tended to do harm at dusk or at night." The IJ then asked her if this was a "criminal gang" that "preyed on vulnerable people to satisfy their criminal desires." Tomas-Mateo responded "Yes, that's right." Finally, the IJ said: "Now

---

[2] Applicants for withholding of removal must demonstrate a "clear probability" their life or freedom would be threatened on account of "race, religion, nationality, membership in a particular social group, or political opinion." 8 U.S.C. § 1232 (b)(3)(A).

it sounds to me, ma'am, that you are primarily afraid of being subjected to random acts of criminal violence by this gang. Is that correct?" Tomas-Mateo responded "Yes, that's right."

The *only* record evidence which even tangentially deals with the Guatemalan authorities came when Tomas-Mateo's attorney asked her if she and her sister had ever reported the attacks to the police. Tomas-Mateo responded:

> Okay. The police never help us. We didn't have any rights in, in their eyes. The authorities if they wanted – or rather if we wanted the authorities to help us, they expected us to pay them money for it. We were humble people with no rights and they did not defend us. And I had no money to pay them.

Tomas-Mateo now contends that this statement should be read to mean that "we" (the Konjubal, rather than "we," herself or her sister) had no rights in the eyes of police officers, and that police officers refused to protect them. Tomas-Mateo has offered *no* evidence to support this reading of the statement. Tomas-Mateo submitted no evidence that Guatemalan police fail to protect members of the Konjubal, nor does the State Department Country Report on Guatemala make such a conclusion. Moreover, Tomas-Mateo's statement came in response to a question about *whether she and her sister had ever reported the attacks;*[3] thus, "we" most probably refers to her and her sister. And Tomas-Mateo's statement does *not*

---

[3] Notably, Tomas-Mateo did not testify that they *had* reported the attacks to the police.

mention her Konjubal tribal membership; instead, a plain reading of her statement compels the conclusion that police failed to protect her because she was *poor*.

Nevertheless, Tomas-Mateo now contends—based on this isolated, vague statement before the IJ—that she raised before both the IJ and the BIA a novel legal theory: that she can establish persecution on account of "race, religion, nationality, membership in a political social group, or political opinion," 8 U.S.C. § 1231 (b)(3)(A) even if underlying persecutory *acts* were not motivated by membership in a protected group. Tomas-Mateo contends that even *if* the criminal gangs targeting her and her sister were simply criminal street gangs, she can establish persecution if the government refused to protect her from such random crimes because of her membership in the Konjubal. I take no stance on the merits of this novel claim, but I note that we have *always* required the underlying persecution to be based on a protected ground. *E.g. Siong v. INS*, 376 F.3d 1030, 1039 (9th Cir. 2004) ("[A]ffirmative state action is not necessary to establish a well-founded fear of persecution if the government is unwilling or unable to control *those elements of its society responsible for targeting* a particular class of individuals.").

The majority nevertheless contends Tomas-Mateo raised this novel claim in her brief to the BIA, and that the BIA erred when it failed to address her claim.

As an initial matter, it should be noted that Tomas-Mateo's brief to the BIA was far from a model of clarity. One of two passages in her brief which even raises the possibility of government persecution was clearly copied from another brief by accident:

> Here Respondent clearly stated that the source of the persecution *was the government and* the guerillas and he perceived such persecution to be continuing recently prior to the hearing, based upon his conversations with recent returnees. Transcript p. 31 line 11. He specifically referred to incidences where he was threatened with death.

Emphasis added. Clearly, this portion of the brief is inapplicable to Tomas-Mateo's case. It uses the wrong pronoun ("he" instead of "she,") and cites to page 31 of the transcript, which does not exist in Tomas-Mateo's case (the transcript of Tomas-Mateo's proceedings before the IJ is only 24 pages long). The passage is also completely irrelevant to the facts of this case. I assume the majority does not rely on this passage for its conclusion that Tomas-Mateo raised a claim of government persecution before the BIA.

The only other passage from Tomas-Mateo's brief before the BIA which mentions government involvement is as follows:

> Here it is quite clear form [sic] the testimony that the threats of rape and assault were not investigated by the local authorities because the respondent could not pay for protection, as a member of the Konjubal tribe.

> This passage could be read two different ways. It could mean that

5

Guatemalan police officers are corrupt, require bribes, and that members of the Konjubal tribe tend to be impoverished and unable to afford such bribes. Such a contention, of course, would only rise to the level of persecution if the criminal gangs targeted Tomas-Mateo due to her tribal membership, as the police officers' failure to *protect* her came on account of her poverty, not her tribal membership. *See* 8 U.S.C. § 1232(b)(3)(A). Alternatively, this passage could be read to mean that Guatemalan police officers require bribes *only* from the members of the Konjubal, and thus persecuted Tomas-Mateo *directly*, regardless whether she was targeted by the gangs due to her tribal membership.

The majority apparently selects the latter interpretation of this passage—that police officers refused to protect Tomas-Mateo due to her tribal membership. The majority thus holds that the BIA "failed to address" this ground, and remands the case to the BIA. I cannot concur with this holding for several reasons. First, I think the more plausible reading of this passage is that Tomas-Mateo claimed she was persecuted by *gangs* because she was Konjubal, and could not pay for protection because she was *poor*.[4] This interpretation of the passage is consistent with Tomas-Mateo's own testimony before the IJ, in which she stated that "if we

---

[4] I agree with the majority that Tomas-Mateo has now abandoned her contention that gang members attacked her and her family on account of their membership in the Konjubal tribe. Maj. Op at 2.

6

[likely she and her sister] wanted the authorities to help us, they expected us to pay them money for it." Moreover, this interpretation of the passage is more in line with the heading of the passage, which reads "Respondent's fear was based upon persecution of members of the Konjubal tribe who were not protected by law enforcement authority." Had Tomas-Mateo meant to raise a claim that police persecuted her directly, I would expect to see some indication of that claim in the argument header. Second, even if both interpretations of this passage are equally plausible, we defer to the BIA unless "any reasonable adjudicator would be compelled to conclude to the contrary." 8 U.S.C. § 1252 (b)(4)(B). I do not think any reasonable adjudicator would be compelled to conclude that Tomas-Mateo raised a claim of direct persecution by the Guatemalan police. Finally, as noted, the contention that the government's failure to protect a protected class from violence even if the underlying violence did *not* target the protected class has no support in our precedent. Of course, Tomas-Mateo was free to make a novel legal argument before the BIA. However, if it was really her intent to do so, such an argument should have been made specifically, and included at least *some* discussion of any relevant legal authority. There was no further discussion of police action or inaction in Tomas-Mateo's brief before the BIA. I would hold that Tomas-Mateo failed to exhaust the issue of direct police persecution before the

7

BIA, and that we therefore lack jurisdiction to consider this claim. *See* 8 U.S.C. § 12529d)(1); *Barron v. Ashcroft*, 358 F.3d 674, 677-78 (9th Cir. 2004).

Nevertheless, the majority chooses to read Tomas-Mateo's vague contentions in her brief extremely charitably. For consistency's sake, therefore, we should read the BIA's decision with the same degree of charity. The BIA correctly held "The transcript is void of *any* testimony discussing the respondent's fear associated with her tribal membership." The word "any" is broad enough to encompass both 1) fear associated with tribal membership on account of gang violence and, 2) Tomas-Mateo's fear that the police would fail to protect her on account of her tribal membership. If the majority insists on giving Tomas-Mateo a presumption that she raised a particular issue to the BIA, it should also presume that the BIA addressed that issue.

Finally, I reiterate that I cannot see the point of remanding this case to the BIA. Tomas-Mateo has submitted no evidence—none at all—that the police failed to protect her on account of her Konjubal membership. Indeed, there is not even any evidence in the record that Tomas-Mateo or her sister *reported* the crimes to the police. Thus, the majority today remands to the BIA based on a claim which was never properly raised or developed, and which the BIA in any event effectively dismissed. Moreover, the majority pointlessly requires additional

8

proceedings before the BIA so that the BIA can most likely reach the same exact outcome.

For these reasons, I must dissent.