**NOT FOR PUBLICATION**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

| | |
|---|---|
| SAID A. ISSE, AKA Said Ali Isse, | No. 17-70178 |
| Petitioner, | Agency No. A208-593-172 |
| v. | |
| WILLIAM P. BARR, Attorney General, | MEMORANDUM[*] |
| Respondent. | |

On Petition for Review of an Order of the
Board of Immigration Appeals

Argued and Submitted November 6, 2019
Portland, Oregon

Before: PAEZ and RAWLINSON, Circuit Judges, and WU,[**] District Judge.
Dissent by Judge PAEZ

Said Ali Isse (Isse) petitions for review of a decision of the Board of

Immigration Appeals (BIA) dismissing his appeal from a ruling by an Immigration

---

[*]     This disposition is not appropriate for publication and is not precedent
except as provided by Ninth Circuit Rule 36-3.

[**]     The Honorable George H. Wu, United States District Judge for the
Central District of California, sitting by designation.

Judge (IJ) that Isse was ineligible for asylum due to firm resettlement in South Africa.

A finding of firm resettlement is a factual determination that we review under the substantial evidence standard. *See Nahrvani v. Gonzales*, 399 F.3d 1148, 1151 (9th Cir. 2005). We may only reverse the BIA's firm resettlement determination if "the evidence compels a contrary conclusion." *Afriyie v. Holder*, 613 F.3d 924, 931 (9th Cir. 2010) (citation omitted).

The Department of Homeland Security presented evidence that Isse received an offer of permanent resettlement as a recognized refugee, and that Isse had full legal protections and rights. This evidence was sufficient to satisfy the government's burden to make a *prima facie* showing of firm resettlement, thereby creating a presumption that Isse had firmly resettled in South Africa. *See Maharaj v. Gonzales*, 450 F.3d 961, 972 (9th Cir. 2006) (en banc). Isse failed to rebut the firm resettlement presumption by establishing through a preponderance of the evidence that the nature of his stay and ties was too tenuous, that the conditions of his residence were too restricted for him to be firmly resettled, or that entry into South Africa was a necessary part of flight from persecution. *See id.* at 963, 976-77.

The record reflects that Isse had no difficulty finding work or places to live during his four years and five months in South Africa. He was able to save money and freely travel throughout the country. Indeed, Isse acknowledged that similarly-situated Somalis were able to own businesses in South Africa and "found peace" there.

Substantial evidence also supports the denial of Isse's claim predicated on the persecution of Somali refugees by private citizens. Isse's experiences with acts of hooliganism were limited to the context of employment in a Somali-owned store. Isse offered no evidence that he ever sought employment in a non-Somali owned business or in a business that was not a store. In addition, Isse never testified as to having ever reported any of the asserted attacks to law enforcement. These facts do not compel a finding of persecution. *See Afriyie*, 613 F.3d at 1151.

Our decision in *Siong v. INS*, 376 F.3d 1030 (9th Cir. 2004), does not dictate the outcome of this case because the issue in *Siong* was whether Petitioner stated a plausible claim, not whether the agency decision was supported by substantial evidence. *See id.* at 1040.

Because substantial evidence supported the firm resettlement determination, Isse was ineligible for asylum. *See Nahrvani*, 399 F.3d at 1155 (upholding a denial of asylum based on a firm resettlement finding).

3

The dissent rests upon the IJ's and BIA's purportedly not having "adequately considered" the persecution that Isse suffered by private actors during his four years and five months in South Africa. The dissent asserts that the IJ/BIA's "analysis focused on persecution from the government, with no consideration given to the persecution Isse experienced by private actors." However, it is clear that that persecution was examined, discussed and taken into consideration in the decisions of the IJ and BIA.[1]

The dissent simply disagrees with the IJ's conclusion (with which the BIA agreed) that "even though xenophobic violence occurs in South Africa, the Record does not reflect that the conditions of his residence in that country were so substantially and consciously restricted that he was not in fact resettled." In reaching that conclusion, the IJ relied upon substantial evidence including Isse's own testimony

---

[1] For example, the IJ *inter alia* observed that:

> [Isse] also testified about his problems in South Africa. He indicated that he worked at various shops owned by Somalis. According to [Isse], wherever he worked thieves came, tied him up, beat him, and sometimes they would turn on the stove and threaten to burn his skin . . . . [Isse] further testified that some of the thieves used "rhetoric" to insult him and other store employees. Some of the things the thieves said included references to the employees' statuses as foreigners, them [sic] having no rights in South Africa, and threats to kill them.

Additionally, the IJ also noted that Isse had "submitted several articles documenting instances of xenophobic violence against Somalis in South Africa."

that "similarly situated Somalis find peace in South Africa, and manage to own and operate businesses."[2] The IJ also found that "there is no evidence or argument that South African officials were the perpetrators or acquiesced in the alleged acts of violence against [Isse]."

In this case, there was evidence on both sides as to the issue of the resettlement bar. Nevertheless, under the applicable standard of review, in order to reverse the IJ/BIA decision, one must conclude that the evidence not only supports the contrary conclusion *but compels it*. *See INS v. Elias-Zacarias*, 502 U.S. 478, 481 n.1 (1992); *Bringas-Rodriguez v. Sessions*, 850 F.3d 1051, 1059 (9th Cir. 2017) (en banc). Isse's evidence and contentions simply do not reach that elevated state.

**PETITION DENIED.**

---

[2] The dissent refers to the fact that some Somalis live safely and in fact prosper in South Africa as merely being "anecdotal evidence" as if it were some second class evidence not to be taken seriously. However, the source of that evidence is Isse himself, whose credibility no one is questioning at this point.

*Isse v. Barr*, No. 17-70178
**Paez, J.**, dissenting.

Throughout his time in South Africa, Isse suffered numerous attacks by private actors due to his identity as a Somali refugee. Yet neither the immigration judge ("IJ") nor the Board of Immigration Appeals ("BIA") adequately considered this persecution when they concluded that Isse firmly resettled in South Africa. The majority repeats this error. Because our precedent recognizes that persecution in a third country may undermine a claim of firm resettlement, and because the record compels a finding that Isse did not firmly resettle in South Africa due to persecution he experienced there, I respectfully dissent.

**1.** The agency erred by failing to consider whether Isse suffered persecution from private actors in the firm resettlement analysis. "[F]irmly resettled aliens are by definition no longer subject to persecution," including persecution by private actors. *Siong v. INS*, 376 F.3d 1030, 1040 (quoting *Yang v. INS*, 79 F.3d 932, 939 (9th Cir. 1996)); *see also Arrey v. Barr*, 916 F.3d 1149, 1155, 1159–60 (9th Cir. 2019). In *Arrey*, "[t]he Board's decision to ignore [evidence of private persecution] made its firm resettlement determination incomplete, and erroneous as a matter of law." 916 F.3d at 1160.

Neither the BIA nor the IJ cited *Siong* or *Arrey* in their firm resettlement analysis. When briefly discussing the violence Isse feared in South Africa, the BIA repeated the IJ's finding that "the record does not show that the conditions of

1

[Isse]'s residence in South Africa were so 'substantially and consciously restricted by the authority of [South Africa]'" to preclude firm resettlement. This analysis focused on persecution from the government, with no consideration given to the persecution Isse experienced by private actors. Therefore, in my view, the agency committed legal error by failing to apply *Siong* and *Arrey*.

The majority incorrectly discounts the holding in *Siong*. The majority contends that *Siong* does not apply because *Siong* concerned ineffectiveness of counsel and whether the petitioner stated a plausible claim for relief to rebut a presumption of firm resettlement, not whether substantial evidence supports an agency's decision. Maj. 3. But the different procedural posture of *Siong* does not lessen its holding. A failure to address an individual's personal experience of persecution renders the agency's decision legally inadequate.

Even if the agency's decision can be construed as applying *Siong* and *Arrey*, the agency's decision is not supported by substantial evidence. Substantial evidence review is deferential as "we may only reverse the agency's determination where the evidence compels a contrary conclusion," *Parada v. Sessions*, 902 F.3d 901, 908–09 (9th Cir. 2018) (internal quotation marks and citation omitted), but "deference does not mean blindness." *Nguyen v. Holder*, 763 F.3d 1022, 1029 (9th Cir. 2014) (quoting *Li v. Ashcroft*, 356 F.3d 1153, 1158 (9th Cir. 2004) (en banc)). The BIA's summary of Isse's fears, that "he will be limited to Somali-owned shops

2

for work, be robbed, and fears xenophobic violence," is forward-looking, and ignores the brutal violence Isse personally experienced in South Africa. And the majority's characterization of Isse's time in South Africa, repeating the agency's findings that "Isse had no difficulty finding work or places to live during his four years and five months in South Africa" and "freely travel[led] throughout the country," masks the violence he encountered. Maj. 3.

Isse's travel in South Africa was not for pleasure; it was to escape persecution. And although Isse found work, working meant risking his life. The first store Isse worked at was repeatedly robbed by local South Africans who "told [Isse] that [Somalis] do not belong in their country and . . . should go back to where [they] came from." In 2013, Isse moved to a different area in Limpopo Province. But that area was similarly plagued with violence—including killings—against Somalis. Isse then moved again, looking for somewhere he "could be safe" and where his "life would not be in danger." But after this last move, in February 2015, a group of armed robbers entered the store where Isse worked, held Isse and his coworkers hostage, beat them, and locked them inside before setting the building on fire. Isse escaped out of the back door, and soon fled South Africa for the United States.

Anecdotal evidence that some Somalis live safely in South Africa does not negate the persecution Isse experienced. *Siong* and *Arrey* require the agency to

3

consider an asylum applicant's particular claims of persecution. *See Siong*, 376 F.3d at 1040; *Arrey*, 916 F.3d at 1159–60. And Isse's experiences in South Africa are not unique or implausible, nor mere acts of "hooliganism" as described by the majority. Maj. 3. Country conditions reports and news stories in the record underscore the pervasive, targeted violence against Somali nationals, including robberies, beatings, and killings.

When the agency did discuss persecution in South Africa—in its separate discussion of Isse's withholding of removal claim from South Africa—its analysis misapplied the law and ignored key portions of the record. The IJ misapplied *Parussimova v. Mukasey* by requiring that nationality or race "stand[] alone" as the reason persecutors attacked him, when *Parussimova* also acknowledges that "persecution may be caused by more than one central reason." 555 F.3d 734, 741 (9th Cir. 2009). That people who robbed Isse also sought financial gain does not lessen their intent to target Somali nationals. *See Sinha v. Holder*, 564 F.3d 1015, 1021 (9th Cir. 2009) (recognizing that the persecutors' "desire to steal petitioners' money and valuables does not undercut the role that racial animus played in their motivation."). Further, the IJ and majority each emphasize that Isse never reported the robberies to police in South Africa. Maj. 3. But they fail to note that Isse's boss did file a police report—which is included in the record—and Isse described the police's failure to protect him in his credible fear interview.

4

Our precedent requires consideration of past persecution in the firm resettlement analysis, including persecution by private actors. Because the agency failed to consider the persecution Isse experienced in South Africa, I would grant the petition and remand for further consideration of whether Isse firmly resettled in South Africa.

**2.** As to the BIA's alternative ruling denying relief based on the possibility of internal relocation in Somalia, I would remand to the BIA to conduct an individualized assessment.  As the government noted in its brief, "[i]t is not clear whether the agency considered Isse's argument that he could not safely relocate to the outskirts of Abudwak" or "whether the agency considered the relevant country reports." *See Matter of M-Z-M-R-*, 26 I. & N. Dec. 28, 33–34 (BIA 2012) (explaining that the Board must consider relevant country reports and conduct an individualized assessment of whether a new location is "substantially better than those giving rise to a well-founded fear of persecution on the basis of the original claim").