# FOR PUBLICATION

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

MARIO MONTES-LOPEZ, AKA
MARIO MORALES-ABREGO,
                    *Petitioner,*

              v.

ERIC H. HOLDER Jr., Attorney
General,
                    *Respondent.*

No. 08-70229

BIA No.
A095-487-944

OPINION

Petition to Review an Order of the
Board of Immigration Appeals

Argued and Submitted
July 18, 2012—San Francisco, California

Filed September 18, 2012

Before: Richard R. Clifton, and Mary H. Murguia,
Circuit Judges, and Raner C. Collins,*
District Judge.

Opinion by Judge Collins

---

*The Honorable Raner C. Collins, United States District Judge for the
District of Arizona, sitting by designation.

11433

# COUNSEL

Robert B. Jobe, Law Office of Robert B. Jobe, San Francisco, California, for the petitioner.

Gregory G. Katsas, Aviva L. Poczter, and Craig A. Newell, Jr. (argued), U.S. Department of Justice, Washington, D.C., for the respondent.

## OPINION

COLLINS, District Judge:

Petitioner Mario Montes-Lopez, a native and citizen of El Salvador, petitions for review of an order of removal. Petitioner's attorney failed to appear at a scheduled merits hearing before an Immigration Judge ("IJ") because his license to practice law had been temporarily suspended. The Immigration Judge found that Petitioner may have learned of his attorney's suspension as much as eleven days before the hearing, and concluded that Petitioner was not diligent in bringing his attorney's suspension to the attention of the court. He denied Petitioner's motion to continue, proceeded with the hearing with Petitioner unrepresented by counsel, and denied Petitioner's application for asylum.

We conclude that the Petitioner's right to be represented in the proceedings by retained counsel, established under 8 U.S.C. § 1362 and related regulations, was violated. We also conclude that a petitioner so denied his right to counsel in an immigration proceeding is not required to demonstrate actual prejudice in order to obtain relief. We therefore grant the petition and remand for further proceedings.

I

Petitioner Mario Montes-Lopez, a native and citizen of El Salvador, entered the United States at Eagle Pass, Texas, on August 13, 2002. The Department of Homeland Security apprehended and detained Petitioner and initiated removal proceedings against him. On December 10, 2002, Petitioner

appeared before the immigration court in San Antonio, Texas, and was granted a continuance in order to obtain counsel. Thereafter, attorney Gloria Lopez appeared on behalf of Petitioner and filed a motion to transfer the case to San Francisco, California. Ms. Lopez subsequently withdrew as counsel.

On April 10, 2003, Petitioner appeared in San Francisco before IJ Phan Quang Tue. Frank Sprouls, a pro bono attorney, appeared on Petitioner's behalf and indicated that the Immigration Law Clinic in Davis, California had agreed to represent Petitioner and requested a second continuance. The IJ granted the continuance, but warned Petitioner that this would be his last continuance. Thereafter, Petitioner hired attorney Otto Peña, and timely filed his application for asylum.

On May 12, 2004, Petitioner appeared before the IJ for his merits hearing. Mr. Peña was not present. Petitioner presented the IJ with a letter from Mr. Peña dated May 1, 2004, which stated:

> Dear Immigration Judge:
>
> the [sic] above mentioned person is scheduled for an individual hearing on May 12, 2004 at pm [sic]. Unfortunately, I am not able to represent him because I have been suspended from the bar until August 2004. I respectfully ask the court to continue this matter until September to allow me to continue representing him or so that he may obtain new counsel.

The IJ then questioned Petitioner about his contact with Mr. Peña:

Q: When did you last talk to Mr. Peña?

A: Last week.

Q: And did you talk to him in person?

A: No.

Q: By phone?

A: Yes.

Q: Okay, and that was after you received this letter?

A: Yes.

Q: The letter was dated May 1st, 2004. Why did you wait until today to give it to me?

A: Because I received it just yesterday.

Q: You received by mail?

A: Yes.

Q: But you just told me that you talked to Mr. P[e]na about a week ago.

A: Yes.

Q: After you received this letter.

A: I would talk to him frequently.

Q: Yes, but you said you talked to him after you received this letter.

A: Well, yes.

Q: But you said you just received this letter yesterday.

A: And I called him to tell him that I received his letter.

Q: When did you last talk to him?

A: Well yesterday, later in the afternoon.

Q: But you just told me you last talked to him about a week ago.

A: Well what happened is that I was talking to him very frequently but often, that's why.

Q: But, I asked you when did you last talk to him and you said you last talked to him a week ago.

A: Okay, it was a mistake, an error.

At this point, the IJ placed Petitioner under oath and continued with the interrogation:

Q: Did you talk to him, last talk to him a week ago?

A: I've talked to him often.

Q: Answer to [sic] my question. When did you last talk to him a week ago?

A: Yes.

Q: And did you talk to him after you received this letter?

A: Just two minutes.

Q: Answer my question. Did you talk to him after you received this letter? The letter you just gave me?

A: Yes.

Q: All right. The letter was dated May 1st, 2004, then why did you just wait until today to give it to me?

A: Because he told me that I should give this to you when I came to court.

Q: So, you received it May 1st?

A: No.

Q: When did you receive it?

A: Yesterday.

Q: You testifying [sic] that you last talked to him a week ago and you talked to him after you received the letter. How could you receive it yesterday if you talked to him a week ago?

A: I beg your forgiveness sir.

Q: Okay, I think you lied to the court.

A: I'm sorry.

Q: I'm going to deny the motion. Did you lie to the court? Yes or no.

A: Yes.

Q: Okay, well why did you have to lie?

A: Well because I was getting confused because I do speak to him very often and also I apologized [sic] but I am very nervous.

Q: Why are you being nervous? I just ask you simple questions.

A: I was trying to concentrate.

The IJ denied Petitioner's request for a continuance, finding that Petitioner lied to the court and that Petitioner's delay in seeking a continuance was unreasonable. The hearing proceeded with Petitioner appearing pro se.

After determining that Petitioner was not a credible witness, the IJ denied Petitioner's applications for asylum and withholding of removal, holding that young men in El Salvador resisting gang recruitment do not constitute a cognizable social group and that Petitioner failed to show past persecution. The IJ concluded that Petitioner was not entitled to protection under Article III of the United Nations Convention Against Torture ("CAT") because according to the 2004 State Department Country Report on Human Rights Practices, the El Salvadoran government was actively combating gang violence, and thus Petitioner could not demonstrate that his torture would be sanctioned by the government.

The BIA summarily affirmed the IJ's decision without opinion and without discussing Petitioner's claim that his right to counsel was violated. We reversed and remanded, holding that the "BIA errs when it fails on appeal to consider and decide claims that the IJ proceedings suffered from procedural irregularity." *Montes-Lopes v. Gonzales*, 486 F.3d 1163, 1165 (9th Cir. 2007). On remand, the BIA adopted and affirmed the IJ's decision, agreeing with the IJ's credibility determination and concluding that Petitioner could not establish that he was prejudiced by the denial of counsel at his merits hearing. This petition for review followed.

## II

We must consider whether the IJ's denial of a continuance violated Petitioner's statutory right to counsel. This is a ques-

tion of law which we review de novo. *See Hernandez-Gil v. Gonzales*, 476 F.3d 803, 804 n.1 (9th Cir. 2007).

**[1]** The Sixth Amendment does not apply in immigration proceedings, but the Immigration and Nationality Act provides that "[i]n any removal proceedings before an immigration judge . . . the person concerned shall have the privilege of being represented (at no expense to the Government) by such counsel, authorized to practice in such proceedings, as he shall choose." 8 U.S.C. § 1362. Regulations require that immigration judges must "[a]dvise the respondent [in a removal proceeding] of his or her right to representation" and of "the availability of free legal services." 8 C.F.R. § 1240.10(a)(1)-(2); *see also* 8 U.S.C. § 1229a(b)(4)(A) (directing the Attorney General to adopt regulations that ensure aliens "shall have the privilege of being represented, at no expense to the Government, by counsel of the alien's choosing."). Additionally, the Fifth Amendment guarantees that immigration proceedings meet basic standards of procedural fairness. *Baltazar-Alcazar v. INS*, 386 F.3d 940, 944 (9th Cir. 2004). We have recognized that denial of counsel or ineffective assistance of counsel in an immigration proceeding may violate the Fifth Amendment. *Id.*; *Mohsseni Behbahani v. INS*, 796 F.2d 249, 251 (9th Cir. 1986).

**[2]** Petitioner's right to counsel was violated when the IJ required him to proceed with the hearing without counsel. It was not Petitioner's fault that his retained attorney was suspended from practice. Although there might have been some confusion and conflicting testimony as to how many days before the hearing Petitioner learned about counsel's suspension, there was no basis to conclude that Petitioner had been aware of the problem for very long or was derelict in responding to it.

Petitioner's ultimate admission that he lied to the court was the result of the IJ's prolonged and hostile interrogation, which did not give Petitioner a fair opportunity to explain

himself. The IJ ignored Petitioner's explanation that he made a mistake and that he was nervous and confused. Instead, the IJ forced Petitioner to admit to lying after submitting him to a confusing barrage of questions. We do not give significant weight to Petitioner's admission. Because the IJ did not identify any other problems with Petitioner's testimony, we conclude that the IJ's adverse credibility determination is not supported by substantial evidence. *See Mendoza-Mazariegos v. Mukasey*, 509 F.3d 1074, 1082-83 (9th Cir. 2007) (giving little weight to petitioner's admission of negligence in failing to contact an attorney when petitioner was confused by the IJ's questions and the IJ showed little patience for petitioner's attempts to explain why he had good cause for a continuance).

**[3]** More importantly, under any interpretation of Petitioner's testimony, the fact was that Petitioner did not know about Mr. Peña's suspension more than a few days before the hearing. The record shows that Petitioner was diligent in making his court appearances and meeting deadlines at every point in the removal proceedings. It was not unreasonable for Petitioner to wait until the hearing to give the IJ the letter from Mr. Peña. *See Baires v. INS*, 856 F.2d 89, 93 (9th Cir. 1988) (noting that any unreasonable conduct on the part of the party seeking a continuance should be considered). Nothing suggests that Petitioner was aware of Mr. Peña's suspension before receiving the letter. Even assuming Petitioner received the letter on May 1, 2004, only eleven days passed before Petitioner notified the IJ at the merits hearing. This was not an unreasonable amount of time to wait, especially in light of Petitioner's testimony that he was following Mr. Peña's instructions. Nor was it unreasonable for Petitioner to conclude that the best thing for him to do, as he was apparently advised by Mr. Peña, was to appear at the hearing and ask for a continuance that would be long enough to permit Mr. Peña to appear for him after his suspension had ended. The IJ was not required to grant that request, to be sure, but if the requested continuance until August was denied, Petitioner still

had a right to counsel and should have been given time to retain another attorney.

**[4]** Even if Petitioner should have notified the immigration court of Mr. Peña's letter sooner, "this misstep does not justify a forfeiture of his right to counsel." *See Mendoza-Mazariegos*, 509 F.3d at 1083 (holding that alien's failure to fire incompetent counsel and find a new attorney "does not justify a forfeiture of his right to counsel."); *see also Hernandez-Gil*, 476 F.3d at 808 ("When an immigrant has engaged counsel and the IJ is aware of the representation, if counsel fails to appear, the IJ must take reasonable steps to ensure that the immigrant's statutory right to counsel is honored."). Here, the IJ did not attempt to ensure that Petitioner's statutory right to counsel was upheld. Instead, the IJ "exhaustively interrogate[d]" Petitioner regarding his contact with Mr. Peña, and after forcing Petitioner to proceed without representation, conducted a "relatively limited" colloquy on Petitioner's claims for asylum, withholding, and CAT protection. *Montes-Lopez*, 486 F.3d at 1164-65. Therefore, we conclude that the IJ's refusal to grant Petitioner a continuance was a violation of Petitioner's right to counsel.

## III

Finally, we must decide whether Petitioner is required to demonstrate that he was prejudiced by the lack of representation at his merits hearing. We hold that he is not.

**[5]** It is well-settled that a petitioner must show prejudice to prevail on a claim that ineffective assistance of counsel in an immigration hearing violated his or her right to counsel. *See Colindres-Aguilar v. INS*, 819 F.2d 259, 261-62 (9th Cir. 1987) (citing *Mohsseni Behbahani v. INS*, 796 F.2d 249, 251 (9th Cir. 1986)). Certain types of ineffective assistance entitle a petitioner to a rebuttable presumption of prejudice. This is the case, at least, "when the petitioner was deprived of an opportunity to appeal because of counsel's untimely filing of

[an administrative] appeal." *Rojas-Garcia v. Ashcroft*, 339 F.3d 814, 826 (9th Cir. 2004); *see also Siong v. INS*, 376 F.3d 1030 (9th Cir. 2004).

**[6]** We have never decided, however, whether prejudice is an element of a claim that counsel has been denied in an immigration proceeding. *Hernandez-Gil*, 476 F.3d at 808; *Baltazar-Alcazar*, 386 F.3d at 947; *Colindres-Aguilar*, 819 F.2d at 262; *Rios-Berrios v. INS*, 776 F.2d 859, 863 (9th Cir. 1985). In each case that has presented that question, we noted the absence of governing law, but determined that the petitioner(s) had in fact suffered prejudice, and so were entitled to reversal even if prejudice was required. *Baltazar-Alcazar*, 386 F.3d at 957 (noting that "[t]he Ninth Circuit has yet to decide whether prejudice is required when a petitioner has demonstrated denial of the right to counsel in deportation proceedings" but reserving the question because the petitioners "were in fact prejudiced by the denial of their right to counsel"); *Hernandez-Gil,* 476 F.3d at 808 (noting that it was "unsettled whether there must be a showing of prejudice where, as in this case, counsel has been effectively denied" but determining that "Hernandez-Gil has shown that he was prejudiced") (internal quotation marks omitted); *Ram v. Mukasey*, 529 F.3d 1238, 1243 n.1 (9th Cir. 2008) ("[b]ecause we conclude that Ram's due process rights were violated, we need not reach the question, which was neither briefed nor argued, of whether the violation of the statutory or regulatory right to counsel requires a showing of prejudice.").

The relevant authority in the sister circuits is split. *Baltazar-Alcazar*, 386 F.3d at 947 n.6 (collecting relevant out-of-circuit cases). The Second, Third, Seventh, and D.C. Circuits do not require a showing of prejudice, but the Fourth, Fifth, and Tenth Circuits do. *Id.*; *Leslie v. Attorney Gen.*, 611 F.3d 171 (3d Cir. 2010). We think the reasoning of the Circuits that do not require prejudice is more persuasive and more applicable to this case than the reasoning of the Circuits that do require prejudice.

In *Montilla v. INS*, 926 F.2d 162, 169 (2d Cir. 1991), the Second Circuit concluded that an immigration judge had violated applicable regulations by failing to notify an alien of his right to counsel and of the availability of free legal services. The Second Circuit reasoned from "the long-settled principle that the rules promulgated by a federal agency, which regulate the rights and interests of others, are controlling upon the agency." *Id.* at 166 (citing *Columbia Broadcasting System, Inc. v. United States*, 316 U.S. 407, 422 (1942)). It declined to add a prejudice requirement to this rule because it reasoned that automatic reversal upon violation of such a regulation would encourage agency compliance with its own rules and serve the interests of judicial economy. *Id.* at 169. It concluded that:

> [A]n alien claiming the INS has failed to adhere to its own regulations regarding the right to counsel in a deportation hearing is not required to make a showing of prejudice before he is entitled to relief. All that need be shown is that the subject regulations were for the alien's benefit and that the INS failed to adhere to them.

*Id.* at 169; *see also Waldron v. INS*, 17 F.3d 511, 518 (2d Cir. 1993) (adhering to *Montilla* but declining to extend it to procedural violations that do not involve the deprivation of fundamental rights).

In *Leslie*, the Third Circuit reached the same result by very similar reasoning. It observed that the Supreme Court has imposed a prejudice requirement in cases involving violation of "a mere 'procedural rule[ ] adopted for the orderly transaction of business' in order to 'aid the Commission in exercising its discretion.' " *Leslie*, 611 F.3d at 176 (quoting *Am. Farm Lines v. Black Ball Freight Serv.*, 397 U.S. 532, 538-39 (1970)). No showing of prejudice is required, however, when a rule is " 'intended primarily to confer important procedural benefits upon indiv[i]duals' " or "when alleged regulatory

violations implicate fundamental statutory or constitutional rights." *Id.* at 176, 180 (quoting *Am. Farm Lines*, 397 U.S. at 539). It reasoned that the regulation requiring immigration judges to give notice of the availability of free legal services in *Leslie* was a "particularly important procedural safeguard" that "derives from 8 U.S.C. § 1362." *Id.* at 180-81. Accordingly, the petitioner in *Leslie* was not required to show prejudice. *Id.* at 182.

In *Castaneda-Delgado v. INS*, 525 F.2d 1295 (7th Cir. 1975), the Seventh Circuit also declined to impose a prejudice requirement on a petitioner who alleged deprivation of his right to counsel in an immigration proceeding. The Seventh Circuit observed that in the criminal context, it is well-settled that the Sixth Amendment right to counsel " 'is too fundamental and absolute to allow courts to indulge in nice calculations as to the amount of prejudice arising from its denial.' " *Id.* at 1300 (quoting *Glasser v. United States*, 315 U.S. 60, 76 (1942), superseded by statute on other grounds as stated in *Bourjaily v. United States*, 483 U.S. 171, 177 (1987)); *accord Campbell v. Rice*, 408 F.3d 1166, 1176 (9th Cir. 2005). The Seventh Circuit identified no reason for indulging in such calculations outside the criminal context. *See id.* at 1300-1301. Moreover, it reasoned that the statutes and regulations granting a right to representation in immigration proceedings "would be eviscerated by the application of the harmless error doctrine." *Id.* at 1302; *see also Batanic v. INS*, 12 F.3d 662, 667 (7th Cir. 1993) (adhering to *Castaneda-Delgado*); *Snajder v. INS*, 29 F.3d 1203, 1207 (7th Cir. 1994) (same). Accordingly, it reversed without requiring the petitioner to show prejudice. *Id.* at 1302.

In *Cheung v. INS*, 418 F.2d 460, 464 (D.C. Cir. 1969), the D.C. Circuit reached a similar decision. After concluding that the petitioner's right to counsel had been violated, the D.C. Circuit reasoned that "there is limited room in administrative law for the doctrine of harmless error." *Id.* It concluded that no prejudice inquiry is appropriate for "some rights, like the

assistance of counsel, [that] are so basic to a fair trial that their infraction can never be treated as harmless error." *Id.*

The Fourth, Fifth, and Tenth Circuits do require a showing of prejudice, but we think the decisions in which they adopted this requirement are less persuasive than the decisions discussed above. All of the cases of which we are aware arose from either relatively minor violations of the right-to-counsel regulations, *Delgado-Corea v. INS*, 804 F.2d 261, 263 (4th Cir. 1986), or from situations where there was no violation of the right to counsel at all, and the court of appeals noted the absence of prejudice only as an alternative holding. *Farrokhi v. INS*, 900 F.2d 697, 702 (4th Cir. 1990); *Patel v. INS*, 803 F.2d 804, 807 (5th Cir. 1986). None of the cases persuasively address the principles of administrative and constitutional law applied in the Second, Third, Seventh, and D.C. Circuit opinions. *See id.*

The government argues that it is inconsistent to make prejudice an element of claims of ineffective assistance of counsel in an immigration proceeding but not of claims of denial of counsel in an immigration proceeding. We disagree. Such ineffective assistance of counsel claims require a showing of prejudice because they are based on the Fifth Amendment right to a proceeding that is "full and fair" as a whole. *Garcia-Jaramillo v. INS*, 604 F.2d 1236, 1239 (9th Cir. 1979). If the alien cannot show prejudice, then his or her right to a full and fair hearing has not been violated. *Id.* A claim that counsel has been denied is different for two reasons. First, such a claim is not based not only on the Fifth Amendment's general right to a full and fair hearing, but on the specific law and regulations that give aliens a right to be represented by the attorney of their choice. *See., e.g., Baltazar-Alcanzar*, 386 F.3d at 947. When this court concludes that an agency has not correctly applied controlling law, it must typically remand, even if we think the error was likely harmless. *INS v. Orlando Ventura*, 537 U.S. 12, 16-17 (2002).

Second, denial of counsel more fundamentally affects the whole of a proceeding than ineffective assistance of counsel. Among other things, the absence of counsel can change an alien's strategic decisions, prevent him or her from making potentially-meritorious legal arguments, and limit the evidence the alien is able to include in the record. This means that denial of counsel is likely, at least in the aggregate, to be more prejudicial than ineffective assistance of counsel. It also means that it is more impractical for courts to determine whether prejudice accompanied a particular denial of counsel than whether it accompanied a particular instance of ineffective assistance of counsel.

**[7]** This circuit's Sixth Amendment law recognizes this distinction. A criminal defendant who alleges ineffective assistance of counsel must generally show prejudice, *Smith v. Mahoney*, 611 F.3d 978, 1001 (9th Cir. 2010), but a defendant who has been denied counsel need not. *Campbell v. Rice*, 408 F.3d 1166, 1176 (9th Cir. 2005). When counsel's assistance is so ineffective as to amount to a constructive denial of counsel, prejudice is presumed, but may be rebutted by the prosecution. *Smith*, 611 F.3d at 1001; *see also McNeal v. Adams*, 623 F.3d 1283, 1286 (9th Cir. 2010). The Sixth Amendment does not apply in the immigration context, but we see no reason why the logic that has guided our interpretation of the Sixth Amendment should not also guide our decision here.

Our decision today is not contrary to our decisions in appeals from convictions for illegal re-entry after deportation under 8 U.S.C. § 1326. *See, e.g.*, *United States v. Reyes-Bonilla,* 671 F.3d 1036, 1047-49 & n.11 (9th Cir. 2012). In *Reyes-Bonilla*, we held that a § 1326 defendant who collaterally attacks a predicate deportation on the grounds that he or she was denied counsel during the deportation proceeding must show that the denial of counsel caused prejudice. *Id*. The prejudice requirement we imposed in *Reyes-Bonilla*, however, is rooted in the limitations on criminal defendants' right to collaterally attack the result of a prior proceeding. Such col-

lateral attacks are generally not allowed, but there is an exception to this rule when the alleged procedural deficiencies in a prior proceeding unconstitutionally "foreclose judicial review." *United States v. Mendoza-Lopez*, 481 U.S. 828, 837-38 (1987). This constitutional right is only implicated when the deportee has suffered prejudice. *United States v. Proa-Tovar*, 975 F.2d 592, 595 (9th Cir. 1992) (en banc). Thus, any collateral attack on the predicate deportation proceeding in a § 1326 prosecution requires a showing of prejudice, irrespective of whether the defendant alleges denial of counsel or some other procedural problem. The denial of counsel claim in this case is different because it reaches this court as part of a petition for review under 8 U.S.C. § 1252, not a collateral attack on the result of a prior proceeding. Since the petitioner does not need to avail himself of the constitutional exception to the rule against collateral attacks, he need not meet the *Proa-Tovar* prejudice requirement.

Our decision today is also not contrary to our decision in *United States v. Calderon-Medina*, 591 F.2d 529, 531 (9th Cir. 1979). In *Calderon-Medina*, the defendant appealed from his conviction for illegal re-entry after deportation under 8 U.S.C. § 1326. He argued that during his deportation proceeding the INS had violated regulations requiring the INS to make personal service of an order to show cause and to advise the alien of his right to contest the evidence against him. *Id.* at 531. We held that "[v]iolation of a regulation does not invalidate a deportation proceeding unless the regulation serves a purpose of benefit to the alien." *Id.* The Second and Third Circuits subsequently interpreted this broadly-phrased sentence in *Calderon-Medina* to mean that in this Circuit prejudice is an element of a denial of counsel claim. *Leslie,* 611 F.3d at 177; *Montilla*, 926 F.2d at 167.

We do not read *Calderon-Medin*a this way. First, *Calderon-Medina* was a § 1326 case, so its relevance outside that context is limited by the considerations discussed above. Moreover, we based the prejudice requirement in *Calderon-*

*Medina* on the Supreme Court's decision in *American Farm Lines*. As described above, *American Farm Lines* requires a showing of prejudice when a petitioner seeks relief from violation of a relatively minor procedural rule "adopted for the orderly transaction of business." 397 U.S. at 539. As the Third Circuit has recognized, *American Farm Lines* must be reconciled with *Accardi*, which "teaches that some regulatory violations are so serious as to be reversible error without a showing of prejudice." *Leslie*, 611 F.3d at 178. We agree with the other circuits that have concluded that denial of counsel in an immigration proceeding is serious enough to be reversible without a showing of error, and we do not think *Calderon-Medina* is to the contrary.

**[8]** For these reasons, we hold that an alien who shows that he has been denied the statutory right to be represented by counsel in an immigration proceeding need not also show that he was prejudiced by the absence of the attorney.

IV

**[9]** Immigration judges have broad discretion to deny an alien's motion to continue. It is not necessary to continue hearings indefinitely merely because an alien says that he or she cannot find counsel. The IJ's decision in this case, however, was based on an unrealistic analysis of Petitioner's diligence and failed to adequately protect the Petitioner's right under 8 U.S.C. § 1362 to be represented by an attorney. The law does not require Petitioner to show that the violation of this statute caused him prejudice. Accordingly, we grant the petition and remand for further proceedings consistent with our opinion.

**PETITION GRANTED.**