**NOT FOR PUBLICATION**

**FILED**

UNITED STATES COURT OF APPEALS

JUN 10 2026

FOR THE NINTH CIRCUIT

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

| | |
|---|---|
| MARIA TERCERO-BAUTISTA, | No. 25-3269 |
| Petitioner, | Agency No. A088-717-589 |
| v. | |
| TODD BLANCHE, Acting Attorney General, | MEMORANDUM[*] |
| Respondent. | |

On Petition for Review of an Order of the
Board of Immigration Appeals

Submitted April 13, 2026[**]
Pasadena, California

Before: PAEZ, CALLAHAN, and BUMATAY, Circuit Judges;
Partial Concurrence and Partial Dissent by Judge Paez.

Maria Tercero-Bautista ("Tercero-Bautista"), a native and citizen of

Guatemala, petitions for review of a decision of the Board of Immigration Appeals

("BIA") dismissing her appeal from an order of an Immigration Judge ("IJ")

---

[*] This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

[**] The panel unanimously concludes this case is suitable for decision without oral argument. *See* Fed. R. App. P. 34(a)(2).

denying asylum, withholding of removal, and protection under the Convention Against Torture ("CAT"). We review the agency's legal conclusions de novo, *Bringas-Rodriguez v. Sessions*, 850 F.3d 1051, 1059 (9th Cir. 2017) (en banc), and its factual findings for substantial evidence, *Plancarte Sauceda v. Garland*, 23 F.4th 824, 831 (9th Cir. 2022). A due process challenge in an immigration proceeding is reviewed de novo. *Zetino v. Holder*, 622 F.3d 1007, 1011-12 (9th Cir. 2010) (citing *Padilla v. Ashcroft*, 334 F.3d 921, 923 (9th Cir. 2003)). Where the BIA conducts its own review, our "review is limited to the BIA's decision, except to the extent that the IJ's opinion is expressly adopted." *Guerra v. Barr*, 974 F.3d 909, 911 (9th Cir. 2020) (internal quotation marks and citation omitted). We have jurisdiction under 8 U.S.C. § 1252, and we deny the petition for review.

1. Tercero-Bautista's concedes that she is not eligible for asylum. We agree. Because she failed to bring her asylum claim within one year of entry into the United States, her asylum claim is time barred. *See* 8 U.S.C. § 1158(a)(2)(B).

2. Tercero-Bautista appears to argue that the immigration court lacked jurisdiction over her case and, alternatively, that her case should be remanded. As to jurisdiction, Tercero-Bautista argues that the immigration court lacked jurisdiction over her case because the Notice to Appear ("NTA") did not list the time, place, and date of her initial hearing. We disagree. *See United States v. Bastide-Hernandez*, 39 F.4th 1187, 1192 (9th Cir. 2022) ("Although the statutory

definition of an NTA requires that it contain the date and time of the removal hearing . . . this provision chiefly concerns the notice the government must provide noncitizens regarding their removal proceedings, not the authority of immigration courts to conduct those proceedings."). Here, though the NTA did not include the date, time, or location of Tercero-Bautista's removal hearing, the immigration court provided her with a subsequent Notice of Hearing that contained the date, time, and location of her removal hearing. In response, Tercero-Bautista appeared for her initial removal hearing on June 22, 2009, and every subsequent hearing. Accordingly, the jurisdictional argument fails. *See Aguilar Fermin v. Barr*, 958 F.3d 887, 895 (9th Cir. 2020) (stating that the remedy for a deficient NTA is "providing the [noncitizen] and the government with the complete notice at a later time").

Tercero-Bautista argues that the BIA should have addressed whether its decision in *Matter of Fernandes*, 28 I&N Dec. 605 (BIA 2022) warrants a remand. However, she made no such argument to the BIA and never sought remand by the BIA pursuant to *Matter of Fernandes*. Rather, Tercero-Bautista raised this claim for the first time in her petition for review. This claim is therefore unexhausted.[1] *See Umana-Escobar v. Garland*, 69 F.4th 544, 550 (9th Cir. 2023) ("Exhaustion

---

[1] To the extent that Tercero-Bautista raises an ineffective assistance of counsel claim, that too was never raised before the BIA and is also unexhausted. *See Umana-Escobar v. Garland*, 69 F.4th 544, 550 (9th Cir. 2023).

requires a non-constitutional legal claim to the court on appeal to have first been raised in the administrative proceedings below, and to have been sufficient to put the BIA on notice of what was being challenged." (quotation and citation omitted)).

3. Regarding withholding of removal, Tercero-Bautista's petition for review challenges only the IJ's social group cognizability conclusion, which the BIA did not address. Accordingly, this argument falls outside the scope of our review. *See Garcia v. Wilkinson*, 988 F.3d 1136, 1142 (9th Cir. 2021) ("In reviewing the BIA's decisions, [the court] consider[s] only the grounds relied upon by that agency."). Additionally, because Tercero-Bautista challenges only social group cognizability, she fails to challenge the dispositive bases on which the BIA relied—lack of nexus and failure to establish that Guatemalan authorities were or would be unable or unwilling to protect her. Failure to challenge these determinations constitutes forfeiture. *See Hernandez-Ortiz v. Garland*, 32 F.4th 794, 805 (9th Cir. 2022) ("Petitioner has not argued that these determinations were error, and so has forfeited any such challenge.").

4. Tercero-Bautista argues that the BIA erred in denying relief under CAT because it failed to consider her country condition evidence. The BIA, however, upheld the denial of CAT relief on a single basis—failure to establish government acquiescence. Because Tercero-Bautista fails to challenge the single dispositive

basis on which the BIA relied, her challenge to the agency's CAT determination fails. *See Garcia*, 988 F.3d at 1142; *Hernandez-Ortiz,* 32 F.4th at 805.

5. Tercero-Bautista next argues that the IJ's reliance on *Matter of A-B-*, 27 I&N 316 (A.G. 2018) was legal error requiring reversal, and that the IJ violated her right to due process. We disagree. The *Matter of A-B-* line of cases relates to the issue of social group cognizability, *not* nexus or government protection. Therefore, the BIA properly determined that the IJ's reliance on *Matter of A-B-* had no effect on the IJ's lack of nexus finding or the IJ's determination that Tercero-Bautista failed to establish that the Guatemalan government would be unable or unwilling to protect her. Thus, the BIA did not err.

Tercero-Bautista's due process arguments fare no better. Tercero-Bautista argues that she was deprived of due process because (1) she was forced to proceed without counsel, (2) she was denied a proper interpreter, and (3) the IJ was biased against her. "A full and fair hearing is one of the due process rights afforded to aliens in deportation proceedings [and] . . . [a] court will grant a petition on due process grounds only if the proceeding was so fundamentally unfair that the [noncitizen] was prevented from reasonably presenting [their] case." *Gutierrez v. Holder*, 662 F.3d 1083, 1091 (9th Cir. 2011) (citations and quotation marks omitted). To prevail on a due process challenge, "[a] petitioner must show that the denial of his or her right . . . potentially affected the outcome of the proceedings."

*Arrey v. Barr*, 916 F.3d 1149, 1159 (9th Cir. 2019) (internal quotation marks and citation omitted).

a. Proceeding without counsel: Tercero-Bautista argues that she was forced to proceed without counsel in violation of her right to due process. As the BIA recognized, proceedings in this case began in June 2009, over ten years before the final merits hearing on February 13, 2020. That hearing occurred only after Tercero-Bautista received several continuances to find a lawyer spanning over nine years. Under these circumstances, the denial of additional continuances to obtain counsel was not a deprivation of due process. *See Gutierrez*, 662 F.3d at 1091 (a due process challenge requires conduct "so fundamentally unfair that the [noncitizen] was prevented from reasonably presenting his case" (citations and quotation marks omitted)).

b. Deficient Interpreter: Tercero-Bautista argues that the Konjobal translation did not match her exact dialect depriving her of her right to a fair hearing. "Due process requires that an applicant be given competent translation services" if he or she does not speak English. *He v. Ashcroft*, 328 F.3d 593, 598 (9th Cir. 2003). Tercero-Bautista, however, fails to identify specific instances of misunderstanding and fails to explain how any asserted issues with the translation affected her testimony or the outcome of the hearing. This is fatal to her due process argument. *See Guan v. Barr*, 925 F.3d 1022, 1033 (9th Cir. 2019)

25-3269

(concluding there was no due process violation where petitioner did not explain how the problems with the interpreter affected his testimony or otherwise impacted the hearing's fairness); *see also* <u>Aden v. Holder</u>, 589 F.3d 1040, 1047 (9th Cir. 2009) ("To establish a due process violation, *a petitioner must show* that defects in translation prejudiced the outcome of the hearing." (emphasis added)).

c. <u>Bias</u>: Finally, Tercero-Bautista argues that the IJ was biased. An IJ's failure to behave as a neutral adjudicator may violate due process. *See Colmenar v. INS*, 210 F.3d 967, 971 (9th Cir. 2000). Tercero-Bautista, however, fails to establish that the IJ was not neutral. At most, Tercero-Bautista highlights that the IJ was, at times, harsh. But an IJ may "aggressively and sometimes harshly" question a witness. *Melkonian v. Ashcroft*, 320 F.3d 1061, 1072 (9th Cir. 2003). Indeed, "a mere showing that the IJ was unfriendly, confrontational, or acted in an adversarial manner is not enough to" show that the underlying proceeding was fundamentally unfair, such that a noncitizen was prevented from reasonably presenting their case. *Rizo v. Lynch*, 810 F.3d 688, 693 (9th Cir. 2016).

**PETITION FOR REVIEW DENIED.**[2]

---

[2] The motion to stay removal (Dkt. No. 3) is DENIED. The temporary stay of removal shall remain in place until the mandate issues.

7                                                                 25-3269

*Tercero-Bautista v. Blanche,* No. 25-3269

PAEZ, Circuit Judge, concurring in part and dissenting in part:

I respectfully dissent from the majority's denial of Tercero-Bautista's petition for review with respect to her due process claim based on inadequate translation services.  In my view, where deficient translation services at a pro se applicant's merits hearing are evident from the face of the transcript, we should presume the applicant suffered prejudice.

\*

Tercero-Bautista, a native and citizen of Guatemala, petitions for review of a decision of the Board of Immigration Appeals ("BIA") dismissing her appeal from an order of an Immigration Judge ("IJ") denying asylum, withholding of removal, and protection under the Convention Against Torture ("CAT").  Her primary language is "Q'anjob'al" or "Konjobal," an indigenous Mayan language primarily spoken in Guatemala.

In 2009, Tercero-Bautista paid her original attorney, Manuel A. Gonzalez, $5,500 to prepare her application for relief and to represent her.  Gonzalez took Tercero-Bautista's money, submitted a bare-bones application, absconded before her merits hearing, and kept her file—leaving her without "anything."  Gonzalez was suspended from the practice of law in 2011 and 2012, and disbarred in 2019

1

for "tak[ing] advantage of clients in immigration and criminal cases."[1] Tercero-Bautista was one of many clients who filed a complaint with the state bar and an application for reimbursement. But she never got her money back. And because she "had to feed [her] children," she could not afford to pay for a second lawyer, and had no choice but to appear pro se at her merits hearing.

Through an interpreter, an unrepresented Tercero-Bautista testified that the father of her children threatened to murder her, and subsequently "beat" her, hitting her in her face and mouth until she bled. She came to the United States because of his threats; he followed her to the United States and was deported. The application for asylum and withholding of removal prepared by Gonzalez did not contain any of this critical information. When pressed to explain this deficiency, Tercero-Bautista responded that she had no idea what the application contained because she is illiterate: "I cannot read. I cannot write." She "trusted the attorney" had included her experience of domestic violence in her application. No one ever read her application to her.

---

[1] *Matter of Gonzalez,* No. 12-N-16025, 2018 WL 6314657, at *1–2 (Cal. Bar Ct. Nov. 8, 2018).

**\* \***

We review due process claims de novo. Under our precedent, we may find a translation deficient based on "direct evidence of incorrectly translated words, unresponsive answers by the witness, and the witness' expression of difficulty understanding what is said to him." *Siong v. INS*, 376 F.3d 1030, 1041 (9th Cir. 2004).

The inadequacy of the translation services provided to Tercero-Bautista is obvious from an "independent examination of the record." *Perez-Lastor v. I.N.S.*, 208 F.3d 773, 777 (9th Cir. 2000). Although she appeared pro se, Tercero-Bautista made it abundantly clear that she did not understand the interpreter. She repeatedly stated that she did not understand and specifically told the IJ that there were "differences" between her dialect of Konjobal and the interpreter's dialect. Throughout the hearing, the interpreter stated that he needed to repeat himself because Tercero-Bautista did not understand him.

Because she did not understand the interpreter, Tercero-Bautista struggled to answer direct questions and was often nonresponsive. When the IJ pressed why he had to repeat a question six times, Tercero-Bautista responded that she did not "understand" and did not "have any idea what that means." Likewise, when the IJ asked why she was not responding to his questions, Tercero-Bautista was, again, clear: "I'm not ignoring the question. . . I'm not understanding the question."

3

Tellingly, although "[i]t is extremely difficult to pinpoint direct evidence of translation errors without a bilingual transcript of the hearing," the English-language transcript alone provides direct evidence of mistranslation. *Perez-Lastor*, 208 F.3d at 778. For example, Tercero-Bautista responded to a question from the IJ about her purported testimony (as translated by the interpreter): "That's not what I said." Rather than clarifying Tercero-Bautista's testimony, the IJ disagreed, stating, "That is what you said."

Despite these clear translation issues, the majority denies Tercero-Bautista's petition for review in part because she fails to specify how "a better translation would have made a difference in the outcome of the hearing." *Kotasz v. INS*, 31 F.3d 847, 850 n.2 (9th Cir. 1994) (internal quotation marks omitted). But our case law and common sense support inferring that clearly deficient translation services at an applicant's merits hearing "*potentially* affected the outcome of the proceedings," which is all that prejudice requires. *Arrey v. Barr*, 916 F.3d 1149, 1159 (9th Cir. 2019) (emphasis added) (citation omitted).

We have held that a petitioner "can prove prejudice by showing either that [s]he did not understand the questions and thus could not respond to them, or that h[er] answers to the questions were not translated correctly." *Perez-Lastor,* 208 F.3d at 780 n.8; *Colmenar v. I.N.S.*, 210 F.3d 967, 972 (9th Cir. 2000) (characterizing *Perez-Lastor* as "drawing inference of prejudice despite lack of

4

evidence as to what petitioner would have testified"). The applicant need not "explain exactly what evidence [s]he would have presented" in support of her applications had she been provided competent translation services. *Colmenar*, 210 F.3d at 972. Absent specific allegations, "we may infer prejudice." *Agyeman v. I.N.S.*, 296 F.3d 871, 885 (9th Cir. 2002) (citing *Perez-Lastor,* 208 F.3d at 782).

And we presume prejudice in other contexts. For example, where a petitioner "shows that he has been denied the statutory right to be represented by counsel in [the merits hearing] . . . [he] need not also show that he was prejudiced by the absence of the attorney." *Montes-Lopez v. Holder*, 694 F.3d 1085, 1092 (9th Cir. 2012). This is in part because denial of counsel "fundamentally affects the whole of a proceeding," and can "change an [applicant's] strategic decisions, prevent him or her from making potentially-meritorious legal arguments, and limit the evidence the [applicant] is able to include." *Id.* So too, it is "impractical for courts to determine whether prejudice accompanied" denial of counsel. *Id.*

The reasons for presuming prejudice are stronger when an unrepresented applicant receives inadequate translation services. A hearing cannot be "full and fair" unless the proceedings are "competently translated." *Hartooni v. I.N.S.*, 21 F.3d 336, 340–41 (9th Cir. 1994). We have explained that "an incorrect or incomplete translation is the functional equivalent of no translation: the [applicant] must be able to understand the questions posed to him and to communicate his

5

answers to the IJ." *Perez-Lastor*, 208 F.3d at 778.  It should be obvious that "[a]

hearing is of no value when the [applicant] and the judge are not understood."

*Augustin v. Sava*, 735 F.2d 32, 37 (2d Cir. 1984); *Gonzales v. Zurbrick*, 45 F.2d

934, 937 (6th Cir. 1930) ("The right to a hearing is a vain thing if the [applicant] is

not understood.").

Inability to understand an IJ's questions "fundamentally affects the whole of

a proceeding," particularly when an applicant does not have a legal

advocate.  *Montes-Lopez*, 694 F.3d at 1092.  Incompetent translation services

undermine a pro se applicant's ability to testify to the very facts required to

potentially obtain relief.  For example, as seen here, if an applicant cannot

understand an IJ's question about her experience of domestic violence—the basis

upon which she seeks relief—she cannot provide the information that might render

her eligible for relief on that basis.  So too, "credibility grounds" are "uniquely

susceptible to being influenced by a language barrier."  *B.C. v. Att'y Gen. United*

*States*, 12 F.4th 306, 319 (3d Cir. 2021).  Adverse credibility determinations may

be based on nonresponsive answers—but nonresponsive answers may be the result

of incompetent translation services rather than dishonesty.

And as in the denial of counsel context, it would be "next to impossible to

determine" what Tercero-Bautista's merits hearing transcript "would have looked

like" if she had understood the interpreter.  *Gomez-Velazco v. Sessions,* 879 F.3d

6

989, 993 (9th Cir. 2018); *see also* Grace Benton, *"Speak Anglish:" Language Access and Due Process in Asylum Proceedings,* 34 Geo. Immigr. L.J. 453, 472 (2020) ("[I]t is very difficult, if not impossible, to determine the extent to which a faulty interpretation prejudiced the outcome of an asylum case without involving linguistic experts. Judges are not linguistic experts[.]").

This is precisely why we should infer that Tercero-Bautista was prejudiced. We do not know specifically what additional information Tercero-Bautista might have testified to had she understood the interpreter. We do know that Tercero-Bautista's prior attorney did not include the domestic violence that she experienced in her application for asylum, withholding of removal, and CAT protection.[2] And because Tercero-Bautista can neither read nor write, and her attorney failed to orally communicate the contents of the application to her, she was completely unaware of what information was included in the application. At the very least, with proper translation services, Tercero-Bautista would have been able to understand the questions the IJ asked and provided responsive, complete, correctly translated answers.

\* \* \*

---

[2] Although I dissent in part from the majority as to Tercero-Bautista's due process claim, I agree with the majority that Tercero-Bautista's asylum claim is time barred.

7

We should not ignore Tercero-Bautista's deprivation of her right to a full and fair hearing simply because her counsel failed to state the obvious—that a "hearing is of no value when the [applicant] and the judge are not understood." *Augustin*, 735 F.2d at 37. Because I would infer Tercero-Bautista suffered prejudice, I respectfully dissent.